Robert James MOORE, Appellant,

v.

The STATE of Texas, Appellee.

Shirley PHILLIPS, Appellant,

v.

The STATE of Texas, Appellee.

Cynthia STRINGFELLOW, Appellant,

v.

The STATE of Texas, Appellee.

Robert C. THETFORD, Appellant,

v.

The STATE of Texas, Appellee.

Larry Ray JONES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 50191–50195.

Court of Criminal Appeals of Texas.

Dec. 17, 1975.

Malcolm Dade, Melvyn Carson Bruder, Steven S. Condos, Dallas, for appellants.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Jerry Banks, Jay Ethington and Norman Kinne, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

ROBERTS, Judge.

These appellants were convicted of conspiracy to exhibit obscene material in violation of Art. 527, Sec. 6, V.A.P.C.[1] The record shows that the movie "Deep Throat" was exhibited at the Arcadia Theatre in Dallas on March 28, 29, 30, and 31, 1973 and the trial for this offense commenced on August 6, 1973. A jury found appellants guilty and assessed each appellant the maximum punishment of five (5) years' imprisonment and a $5,000 fine.

The evidence revealed that the subject movie was exhibited on the dates indicated above. Vice squad officers seized the movie on March 29, 30, and twice on March 31. Adversary hearings were held prior to each of the first three seizures for a preliminary determination of obscenity. A search warrant and an arrest warrant were issued prior to the fourth seizure.

The record showed that appellant Thetford was the owner of the Arcadia Theatre. Appellants Moore and Jones were managing the theatre on the dates in question. Appellants Phillips and Stringfellow sold tickets to the movie or managed the concession stand on the same dates.

1. Repealed by Acts 1973, 63rd Legislature, chap. 399, Sec. 3(a), p. 991, effective January 1, 1974.

Appellants' first ground of error complains of the argument of the prosecutor at the guilt-innocence stage of the trial. Urging a finding that the movie "Deep Throat" was obscene, the prosecutor argued:

> "And if that is not obscene, we might as well quit. We might as well quit prosecuting obscenity cases if this film here isn't obscene, and concentrate on *sex crimes and other matters that arise after people view things like that*." (Emphasis added)

The suggestion that sex crimes are caused by viewing the movie was objected to as being outside the record, but the objection was overruled.

In *White v. State,* 492 S.W.2d 488 (Tex. Cr.App.1973), the prosecutor's argument "that sixty percent of the crime in Dallas County was attributable to narcotics" necessitated the reversal of a conviction for possession of heroin. This Court unanimously agreed that there was no causal connection in evidence between the possession of heroin and the commission of other crimes in Dallas County. Only slightly less egregious was the argument of another Dallas prosecutor in *Mayberry v. State,* 532 S.W.2d 80 (Tex.Cr.App.1975) that "[heroin] results in more crime in this community; that people do anything to get heroin . . ." Other arguments of causal connections between a defendant's activities and their effects on others were condemned in *Rodriquez v. State,* 520 S.W.2d 778 (Tex. Cr.App.1975) and *Thomas v. State,* 527 S.W.2d 567 (Tex.Cr.App., delivered September 23, 1975).

The State does not really place much stock in its argument that the statement did not indicate a causal connection between dirty movies and sex crimes. Such is the only reasonable interpretation of the argument. Rather, the State strenuously urges that the argument was a reasonable deduction from the evidence. In support of this view, the State refers to the testimony of a defense expert witness, Dr. Green. It is urged that Dr. Green's testimony that movies such as "Deep Throat" were not harmful or unhealthy for "average" people of "normal sexuality" implied that such movies caused un-average abnormal people to commit sex crimes. Such reasoning is tenuous at best, but the State did not offer evidence on this subject. The record reveals that Dr. Green was asked by defense counsel to give the results of numerous studies, by himself and others, of the effects of exposure to explicitly sexual material on sex offenders and normal control groups. The prosecutor's objection that such testimony was immaterial and hearsay was sustained.

There was thus no evidence in the record of the relationship between exposure to sexual materials and the commission of sex crimes. The prosecutor's assertion of a causal connection between the two was clearly improper jury argument. The prejudice to the appellants is apparent from the jury's imposition of the maximum sentence for these offenses. In view of the charged atmosphere in which this trial took place, this Court cannot say that an error raising the spectre of sex crimes not in the record was harmless.

The judgments are reversed and the causes remanded.